# Case No. 16,144.

## UNITED STATES v. The REINDEER.

[2 Cliff. 57.] [1]

Circuit Court, D. Rhode Island. Nov. Term, 1861. [2]

CONFLICT OF JURISDICTION—VESSEL ATTACHED BY STATE PROCESS — FORFEITURE FOR PRIOR ACT OF OWNER — SLAVE-TRADE — ACT OF MARCH 22, 1794.

1. A vessel was seized under the act of March 22, 1794 [1 Stat. 347], as being fitted and prepared for the slave-trade. At the time of the service of the monition by the United States marshal she was in the possession of a state sheriff, by virtue of an attachment issued from a state court. Held, that this court still had jurisdiction, because forfeiture of a

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

[2] [Affirmed in 2 Wall. (69 U. S.) 383.]

vessel arises from the wrongful act of the owner, or some person in charge of the vessel, and wherever the forfeiture is made absolute by an act of congress, the forfeiture attaches at the time the wrongful act is committed, and consequently the owner is divested of his title eo instanter, and the same becomes vested in the United States.

2. The possession of a sheriff, under civil process, whether from state or federal court, will not defeat the operation of the revenue laws of the United States, or impair a forfeiture for engaging in the slave-trade, or for fitting a vessel for the same.

3. Under the first section of the act of March 22, 1794, a vessel is liable to be prosecuted and condemned for engaging in the slave-trade, in any of the circuit or district courts where the vessel may be found and seized. Therefore where a vessel had been fitted and prepared for a traffic of this kind in New York, it was held that she was properly condemned by the district court of Rhode Island, having been seized there.

[Appeal from the district court of the United States for the district of Rhode Island.]

This was a libel of information filed by the district attorney, in behalf of the United States, and claiming forfeiture of the vessel. It was founded on the first section of the act of March 22, 1794, the first section of the act of May, 1800 [2 Stat. 70], and the second section of the act of April 20, 1818 [3 Stat. 450]. The libel was filed in the court below, August 7, 1861, and the case came before this court on appeal from a decree condemning the vessel as forfeited to the United States. [Cases unreported.] It was alleged that the bark Reindeer, of the burden of two hundred and forty-eight tons, was, on the 26th of January, 1861, by a citizen or citizens of the United States, either as master, factor, or owner, fitted, equipped, and prepared, within the port of New York, for the purpose of carrying on the trade or traffic in slaves to some foreign country, contrary to the first-named act of congress. Other counts were contained in the libel which were drawn upon the other acts above named. According to the libel, the bark arrived at the port of New York on July 11, 1861, and it was alleged that she was seized by the collector of the port on the 1st of August following. Claim was filed by Gregorio Tejedor on August 19th, averring that he was the true and bona fide owner of the cargo, and the charterer of the vessel, and praying that he might be admitted to defend. He subsequently filed an answer, denying every statement of the libel. Certain other parties also appeared and made claim to the vessel, and were admitted to defend. They were David M. Coggeshall, sheriff of the county of Newport, and Henry P. Booth and James E. Ward, claiming the vessel as attaching creditors. Answer was also filed by them, denying all the material allegations of the libel, and also pleading to the jurisdiction of the court. In the ninth article of their answer they alleged that David M. Coggeshall, on July 1, 1861, and up to the time of the hearing, was sheriff of the coun-

ty of Newport, and that on the 20th of that month, and again on the 26th, he seized and attached the bark, her cargo, apparel, and furniture, by virtue of several attachments duly issued out of the supreme court of the state; that he thereby became possessed of the bark, her cargo, &c., and that by reason thereof this court had no jurisdiction of the vessel or her cargo. They also alleged that the several acts in the libel charged to have been done were stated to have been so done in the port of New York, and not within the district of Rhode Island, wherefore they averred that the court had no jurisdiction of the charges. During the hearing, claim was also filed by the vice-consul of Spain, stating the bark, her cargo, &c., to be the property of Gregorio Tejedor, before named. Appeal from the decree of the district court to this court was taken by the sheriff of the county of Newport and the attaching creditors. Tejedor was allowed an appeal, upon condition of his filing a bond to prosecute the appeal, but he never complied with the condition, and did not perfect his appeal.

The following was a cargo list of the vessel:

Account of cargo and stores examined by me, as landed in Newport, from bark Reindeer of New York, by order of A. Sanford, United States marshal for Rhode Island, August 12, 1861.

  1 cask, containing hand-saws, back-saws, and packages knives and forks, and bit-stock.
  1 cask, containing sauce-pans, cooking-pans, with their covers.
  2 casks, containing paints in pans. (Not on manifest.)
  1 cask, containing table cutlery, iron spoons, hatchets, hammers, &c.
  2 casks, containing sauce-pans, cooking-pans, and covers.
  3 casks, containing glass tumblers.
  2 packages, containing thirty mess or camp kettles.
16 pipes, containing bread.
187 new oars
  1 cask, containing pickled haddock, fish. (Not on manifest.)
  3 bags coarse salt. (Not on manifest.)
  3 packages, 1 barrel tesago, or jerked beef.
Examined in the store, August 13.
  1 case of thin overcoats.
  2 cases Spanish cigars in boxes.
40 boxes candles.
64 boxes brandy, preserved fruit.
38 boxes claret wines.
15 boxes O T gin.
  7 boxes B brandy.
  7 boxes gin.
100 kegs cut nails, of different sizes.
  2 barrels lime, 1 barrel cement. (Not on manifest.)
117 whole pipes of agua ardente rum.
65 half-pipes of agua ardente rum.
  1 case containing medicines in small packages.
  2 cases, containing medicinal herbs and lint in packages.
  4 large jars chloride lime.
  1 demijohn disinfecting fluid.
  1 box small sponges.
     (Not on manifest.)
All the ship's stores for the voyage in the custom-house.
Examined in the custom-house, August 14.
  1 cask butts and hinges.
  3 casks iron chains from ¼ to ⅜ inches.
  1 cask table cutlery, &c.

  1 cask steel or rat-traps.
  1 cask butts, hinges, padlocks, spoons, &c.
  4 cases mechuts or war knives.
  6 to 8 thousand pounds tesago, or jerked beef.
65 pipes full, partly full, and empty ones, which all appear to have been used as fresh-water pipes. (Not on manifest.)
  9 casks with two shooks, iron-hooped, and are used as ship's fresh-water casks.
The ship has a regular medicine-chest on board.
  5 rolls and some loose flag matting. (Not on manifest.)

Among the charts examined on board the ship, there is one of the West Indies, and a new chart of the west coast of Africa, from Sierra Leone to the Cape of Good Hope; with an old logbook of a voyage to Bathurst, in Africa, in 1856 and 1857. Examined on board ship.

A. Payne and Gilbert Deane, for appellants.

The United States court in admiralty has no jurisdiction in this case. The thing sought to be effected by the proceeding having been, at the time of the commencement of these proceedings, in the custody of an officer of the state court, that custody and jurisdiction is exclusive, and there can be no concurrent jurisdiction. Taylor v. Carryl, 20 How. [61 U. S.] 593, and cases cited; Pars. Merc. Law, 523. The supreme court of the United States has often decided the converse of this proposition in cases where the court acquired the first jurisdiction over the person or property, namely, that no state court can impede or oust the jurisdiction thus obtained, and that the same rule obtains where the jurisdiction of a state court has first attached. The fact that the marshal took manual possession does not affect the question, the state court never having renounced its jurisdiction and control. The United States government having granted to this vessel a clearance from the port of New York, and she having sailed under it and delivered her cargo in Havana, they are estopped from setting up or saying that the vessel was at that time fitted out as a slaver in the port of New York. 1 Greenl. Ev. § 207; Kennedy v. Strong, 14 Johns. 131. But if they were not estopped, the evidence is clear and uncontradicted that at that time she was fitted out for and sailed on a legitimate voyage. No forfeiture of vessel or cargo will be presumed; like other penal laws these will be strictly construed. Clark v. Strickland [Case No. 2,864]; U. S. v. The Emily and Caroline, 9 Wheat. [22 U. S.] 381. The fitting out of this vessel, her apparel, tackle, or furniture, are neither of them within the language or the intention of the statute of 1794, and that statute does not confiscate the cargo. This case does not come within the prohibition of the statute of 1818, because the Reindeer did not sail from any port within the United States at the time she had on board this cargo which is claimed to be suspicious, and which furnishes the only evidence against her. It is under this section of the statute only that the cargo is affected

by the intended or actual employment of the vessel. There is no evidence that a single article of cargo on the Reindeer, when she was seized, was put on her in New York. But the claimants have proved that every article of cargo was laden on her in Havana.

The only remaining question is that arising upon the statute of 1800, which declares: "It shall be unlawful for any citizen of the United States, or for any person residing within the United States, to hold or have any right or property in any vessel employed or made use of in the transportation or carrying of slaves from one foreign country or place to another." The Reindeer has not been "employed in transporting slaves from one foreign country to another." The decisions of the court in The Alexander [Case No. 165] and U. S. v. The Catherine [Id. 14,755] fully sustain the position of the counsel for the claimants. The supreme court in U. S. v. Morris, 14 Pet. [39 U. S.] 473, define the term "employed," as used in the statute, as, "not only the act of doing it, but also to be engaged to do it, to be under contract or orders to do it." Applying this authoritative and common-sense exposition of the statute to this case, is there any pretence that the Reindeer was "employed" in the transportation of slaves? This vessel was not so "employed," "engaged to do it," "under contract to do it," unless the charter-party of Captain C. was valid; if he ran off with or stole the vessel, or violated his duty as captain, in signing that paper, then the vessel was not so "employed" while on her voyage to Africa or any other place, because there was no valid contract of employment. There is no evidence whatever that the owner of this vessel (Pearce) had any knowledge of the "employment" which it is claimed is to work a forfeiture; and the reasoning of the court in the case of U. S. v. The Catharine [supra], as well as common justice, shows that the property of no citizen can be forfeited without a voluntary crime on his part. The testimony of these pretended or professed experts should be entirely disregarded by the court. None of them have any knowledge on the subject on which they have testified. All of them speak from hearsay, and not from knowledge. Each of them contradicts the other, and they only say this cargo is one which might be proper for a legitimate or an illicit voyage. In such case the vessel is to be discharged. U. S. v. The Catharine. In no event can the cargo which is the property of a Spanish citizen be condemned. No law of congress authorizes it. International law forbids it.

Wingate Hayes, U. S. Dist. Atty.

The sheriff of Newport, and the said Henry P. Booth, and James E. Ward & Co. claim the vessel and cargo upon the ground that they had, before the marshal served the monition, attached the vessel and cargo as the property of Pierre L. Pearce. The claimants deny the jurisdiction of this court in this case, upon two grounds. 1. Because the vessel and cargo being, as they say, at the time of the service of the monition in the custody of an officer of a state court, that custody and jurisdiction is exclusive, and there can be no concurrent jurisdiction. 2. Because the offence having been committed, if at all, in the district of New York, the vessel was amenable to that jurisdiction only. Considering the questions of jurisdiction in their order, the libellants say:

This court has jurisdiction, notwithstanding the alleged attachment. The forfeiture of the vessel attaches at the time of the commission of the act inducing forfeiture, thereby eo instanti divesting the owner of all title, and vesting the same in the government. Hence the sheriff could not attach Pearce's interest, for he had none to attach. The alleged attachment was a nullity. That a forfeiture made absolute by statute dates back by relation to the time of the commission of the offence, and not to the date of the judgment, see U. S. v. Grundy, 3 Cranch [7 U. S.] 338; U. S. v. Bags of Coffee, 8 Cranch [12 U. S.] 398; U. S. v. Mars (affirms last case) Id. 417; Gelston v. Hoyt, 3 Wheat. [16 U. S.] 246; Certain Logs of Mahogany [Case No. 2,559]; The Florenzo [Id. 4,886]; Caldwell v. U. S., 8 How. [49 U. S.] 366; Fontaine v. Phœnix Ins. Co., 11 Johns. 293; Roberts v. Wetherhead, 12 Mod. 92; Wilkins v. Despard, 5 Term R. 112; Conk. Tr. (Ed. 1842) 331. Possession by the sheriff under a civil process from a state court will not prevent the operation of the laws of the United States in cases of forfeiture, or oust the admiralty jurisdiction of the United States courts. The Florenzo [supra]; Taylor v. Carryl, 20 How. [61 U. S.] 609; Certain Logs of Mahogany [supra]. In the last-named case, Judge Story said: "No doubt can exist that a ship may be seized under admiralty process, for a forfeiture, notwithstanding a prior replevin or attachment of the ship then pending." If the doctrine contended for by the claimants be law, then the penal laws of the United States relating to revenue navigation, the slave trade, &c., will, by means of collusive attachments, be rendered null and void. Not a case has been or can be found sustaining the proposition of the claimants in cases of forfeiture. The case of Taylor v. Carryl [supra], and all the cases therein cited, refer solely to maritime liens such as seamen's wages, claims for collision, &c., where the state and federal courts generally have concurrent jurisdiction. The leading case of Taylor v. Carryl, 20 How. [61 U. S.] does not refer nor is intended to apply to cases of forfeiture. Judge Taney's opinion in that case (page 609). The sheriff in fact exercised no control of the vessel after the service of the monition. The marshal removed cargo, and, as he swears, had exclusive jurisdiction. The libel is properly filed in this district. The district court of the district where the seizure is made has

exclusive jurisdiction. The Little Ann [Case No. 8,397]; U. S. v. The Betsy, 4 Cranch [8 U. S.] 452; Keene v. U. S., 5 Cranch [9 U. S.] 310; The Bolina [Case No. 1,608]; The Abby [Id. 14]. "The vessel is liable to be seized, prosecuted and condemned, in any of the circuit courts, or district court for the district where the said ship or vessel may be found or seized." Act March 22, 1794, § 1, being one of the acts under which the libel is filed. Judge Betts, in the case of The Kate [unreported], says: "The doctrine is clearly settled, that in prosecutions for penalties or forfeitures, evidence less than what would amount to probable cause, and which would only be a reasonable ground of suspicion against the party proceeded against, is competent and proper proof upon which such forfeiture may be adjudged, if not satisfactorily contradicted, or explained by countervailing proofs;" and cites Murray v. The Charming Betsey, 2 Cranch [6 U. S.] 122; Maley v. Shattuck, 3 Cranch [7 U. S.] 488; The Josefa Segunda, 5 Wheat. [18 U. S.] 338. See, also, The Catherine [Case No. 14,755]; The Josefa Segunda, 10 Wheat. [23 U. S.] 312; The Struggle, 9 Cranch [13 U. S.] 71.

The Reindeer was found with a fit-out, preparation, and cargo, that indicated beyond all question that she was destined on a voyage for slaves. Though it is not necessary that the vessel should be completely fitted out, any preparation for the slave trade being sufficient (The Emily and Caroline, 9 Wheat. [22 U. S.] 381; The Plattsburgh, 10 Wheat. [23 U. S.] 133); yet in the case of the Reindeer, scarcely anything was wanting to indicate her complete fitment as a slaver. See case of The Plattsburgh, Id. 133. That the Reindeer was not on a legitimate voyage, but was bound for the coast of Africa for slaves, is evident from the ship's papers, especially the sea letter and manifest, and from the protest of the captain. The manifest declares the vessel to be bound for Falmouth for orders. The captain in his protest swears she was bound for Falmouth. The Spanish sea letter, enclosed in a sealed package, declares the destination to be San Antonio. Honest traders do not have conflicting papers. The cargo is neither adapted to the Falmouth nor San Antonio markets. At the present hearing, this fact is admitted; though the record shows that witnesses were cross-examined at length to prove that the cargo was suitable for either market. No evidence, however, has been offered by claimants to show the true destination of the vessel. The character and destination of the Reindeer is shown by her cargo. The character of the cargo always affords strong evidence. A cargo of cotton is presumed for some place of cotton manufactures; of molasses, not for Cuba, or of coals for Newcastle. The cargo occupies not over one third of the vessel, consisting chiefly of articles usually found on board slave vessels, and of some articles never found on board other vessels, but indispensable in slavers; nearly all the suspicious articles are disguised on the manifest, or not manifested at all. Not a tittle of explanatory evidence is offered, although the claimants could show the true destination of the cargo without difficulty. A bark of two hundred and forty-eight tons, bound to the coast of Africa, with a captain, crew, and two supercargoes, irons, chains, padlocks, sweeps, lime, biscuit, jerked beef, mess-kettles, sauce-pans, flag mattings, sponges, medicines (adapted in quantity and kind for a slave voyage),—chloride of lime and disinfecting fluid,—all to obtain sixty-five wine pipes of palm oil! The vessel was fitted, equipped, otherwise prepared, and caused to sail, by Pearce, or Cunningham, her master, either as owner or master, for themselves or for some other person. The vessel was fitted, equipped, otherwise prepared, and caused to sail from New York, for the purpose of carrying on traffic in slaves. Unless clear and satisfactory explanation be furnished by the claimants to the contrary, it will be presumed that the vessel was fitted, equipped, prepared, and caused to sail, and intended for the purpose of carrying on the business in which she was found to be engaged. See rule of evidence in slave cases. Judge Betts's opinion in The Kate. The burden lies on the claimants to show this by clear and unequivocal testimony. The Catherine [Case No. 14,755]; The Josefa Segunda, 5 Wheat. [18 U. S.] 338. The claimants have not even attempted to explain anything in relation to the cargo, its destination, the objects of the voyage, or the presence of Garcia and Pinto on board. They set up two antagonistic excuses: 1st. That the vessel was chartered to Tejedor. 2d. That she was sold by Pearce to Tejedor, and that Pearce knew nothing of her use; that in fact the bark was on a new voyage. The Reindeer, having been admitted to be owned by an American citizen, and proved to have been found employed in the slave-trade, must be condemned under the act of congress of May 10, 1800, § 1. A vessel bound for Africa, for slaves, is "employed" in the slave-trade, within the meaning of the act. The Catherine [supra]; The Alexander [Case No. 165]. A captain has a right to charter a vessel in a foreign port. Abb. Shipp., passim. If a vessel be so "employed," she will be forfeited, though the owners be innocent. U. S. v. The Malek Adhel, 2 How. [43 U. S.] 210. The act of 1800 was made to meet cases like this, where there were pretended transfers and other evasions. Where the proceeding is in rem, the vessel may be held guilty, whoever be the owner. Courts will not strain the law or facts to find loopholes for vessels, virtually admitted or proved to be slavers, to escape through. It is as much a violation of the law to fit out, prepare, and cause a vessel to sail for the purpose of selling or chartering her to be used as a slaver, as to use her one's self for that purpose; especially, where the risk of retention of the legal title, so as to get the protection of our flag, is run and paid for.

CLIFFORD, Circuit Justice. Two questions of jurisdiction are presented by the pleadings, which will first be considered.

It is insisted by the claimants that this court has not jurisdiction, because the vessel and cargo, at the time of the service of the monition by the marshal, were in the custody of the sheriff of the county of Newport, under a process of attachment issued from the state court. But the proposition cannot be sustained, for several reasons, which will be briefly stated. Forfeiture of a vessel arises from the wrongful act or acts of the owner, or some person or persons in charge of the vessel; and whenever the forfeiture is made absolute by an act of congress, the forfeiture attaches at the time the wrongful act is committed, and consequently the owner is divested of all title eo instanti, and the same becomes vested in the United States. Where the United States have an election to proceed against the vessel, as forfeited, or against the person who committed the wrongful act, no such consequences follow, until the election is made. Accordingly, it was held in Certain Bags of Coffee, 8 Cranch [12 U. S.] 398, that the forfeiture of goods for a violation of the non-intercourse act takes place upon the commission of the offence, and avoids the subsequent sale to an innocent purchaser. But where an election was given to proceed against the vessel, or against the person who took a false oath to procure a registry of the vessel, the court held that the forfeiture did not take place until that election was made. U. S. v. Grundy, 3 Cranch [7 U. S.] 338; The Mars, 8 Cranch [12 U. S.] 417; Gelston v. Hoyt, 3 Wheat. [16 U. S.] 246; Certain Logs of Mahogany [Case No. 2,559]; The Florenzo [Id. 4,886]; Caldwell v. U. S., 8 How. [49 U. S.] 366; Fontaine v. Phœnix Ins. Co., 11 Johns. 293. Evidently the case under consideration falls under the first branch of the rule; but the objection to the jurisdiction may be overruled upon another ground. Possession by the sheriff under a civil process, whether from a state or federal court, will not, in my opinion, defeat the operation of the revenue laws of the United States, or the laws imposing forfeiture for engaging in the slave-trade, or fitting, equipping, or preparing vessels for that purpose. The respondents rely upon the case of Taylor v. Carryl, 20 How. [61 U. S.] 609; but in the opinion of this court, the opinion in that case was never intended to be extended to cases of this description.

In the second place, it is insisted by the claimants that the alleged forfeiture is cognizable in the district court of the United States for the district of New York, and not in the district court for this district. Provision is made by the first section of the act of the 22d of March, 1794, that the vessel shall be liable to be seized, prosecuted, and condemned, in any of the circuit courts or district courts where the said ship or vessel may be found and seized. "Where found and seized," are the words of the act; and while it is not admitted that the circuit courts have any original jurisdiction in such cases, not a doubt is entertained that the libel was properly filed in the court below, and that the case is now properly here on appeal. 1 Stat. 349; The Little Ann [Case No. 8,397]; The Betsey, 4 Cranch [8 U. S.] 452; Keene v. U. S., 5 Cranch [9 U. S.] 310; The Bolina [Case No. 1,608]; The Abby [Id. 14].

Having disposed of the questions of jurisdiction, it becomes necessary to consider very briefly the merits of the controversy. Numerous positions are assumed by the respondents to show that the evidence is not sufficient to justify a decree of condemnation; but in the opinion of this court, it is full and complete, and substantially without conflict or contradiction. Her fitment, preparation, and cargo furnish very decisive evidence that her destination was such as is charged in the libel. That she was not on a legitimate voyage is strongly indicated by her papers. While her manifest declares the vessel to be bound to Falmouth for orders, the protest of the master states that she was bound for Falmouth, and the sea letter, which was enclosed in a sealed package, declares her destination to be for San Antonio; and the evidence shows that her cargo was adapted to neither place. No satisfactory evidence is offered to show where she was bound, but the clear inference from the facts and circumstances is that she was bound on a voyage for slaves. Nothing else can be inferred from her cargo, and such is the opinion of all the experts in the case. A specification of the articles composing the cargo is unnecesary, as they comprise nearly everything which is usually to be found in vessels fitted out for the slave-trade. Certain articles were not included in the manifest, and all or nearly all such were of the class to be found in vessels engaged in that trade. Suspicion also arose in the same direction, from the presence of certain passengers on board, and their conduct, and especially from the conduct of the master and owner.

All explanation is declined, and the claimants rely mainly upon insufficiency of the evidence adduced for the government. Under the circumstances, it is not thought necessary to present the details of the evidence, which would be merely to repeat what is very well stated in the brief of the libellant. Suffice it to say, that, after full consideration, I am of the opinion that the district court could not have decided otherwise upon the evidence. Extended argument upon questions of fact is of no service to either party, and except in cases of real doubt, it will not be attempted. Regarding the case as a clear one, I shall, without hesitation, affirm the decree of the district court with costs.

[The case was taken to the supreme court on an appeal, where the decree of this court was affirmed. 2 Wall. (69 U. S.) 383.]